# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

TALENA M.,[1]                    Case No. 2:22-cv-3034
    Plaintiff,

                                   Litkovitz, M.J.

vs.

COMMISSIONER OF                 ORDER
SOCIAL SECURITY,
    Defendant.

       Plaintiff Talena M. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 11), the Commissioner's response in opposition (Doc. 13), and plaintiff's reply memorandum (Doc. 14).

## I. Procedural Background

       Plaintiff filed her current application for SSI benefits on December 26, 2019, alleging disability the same day, due to schizoaffective disorder, depression, suicidal tendencies, anger issues, heart problems, neck pain, seizures, migraines, and COPD. (Tr. 338). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Matthew Winfrey. Plaintiff, and a vocational expert ("VE"), appeared telephonically and testified at the ALJ hearing on April 15, 2021. (Tr. 168-92). On June 18, 2021, the ALJ issued a decision denying plaintiff's SSI

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

application. (Tr. 8-28). This decision became the final decision of the Commissioner when the Appeals Council denied review on June 13, 2022. (Tr. 1-7).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] has not engaged in substantial gainful activity since December 26, 2019, the application date (20 CFR 416.971 *et seq.*).

2. [Plaintiff] has the following severe impairments: degenerative disc disease of the cervical spine; post-traumatic stress disorder; schizoaffective disorder; generalized anxiety disorder; sedative/hypnotic/anxiolytic use disorder; benzodiazepine abuse disorder in remission; and a history of opioid use disorder (20 CFR 416.920(c)).

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: [plaintiff] can perform no climbing ladders, ropes, or scaffolds; frequently stoop, kneel, crouch; occasionally crawl; frequent handling and fingering; can have no exposure to workplace hazards such as unprotected heights or dangerous, unprotected moving mechanical parts. [Plaintiff] is limited

to performing simple, routine, repetitive tasks but not at a production rate pace, such as one has with assembly line work; limited to making simple work-related decisions; could tolerate occasional interactions with supervisors and coworkers; no interaction with the public; interactions would be superficial meaning interactions would be limited to the straightforward exchange of information, without negotiation, persuasion, or conflict resolution; and can tolerate occasional changes in duties and the work setting.

5. [Plaintiff] has no past relevant work (20 CFR 416.965).

6. [Plaintiff] was born [in] … 1971 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. [Plaintiff] has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[2]

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since December 26, 2019, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-23).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as garment sorter (120,000 jobs in the national economy), marker (115,000 jobs in the national economy), or machine tender (75,000 jobs in the national economy). (Tr. 22-23, 189).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

**D. Specific Error**

On appeal, plaintiff contends that the ALJ erred when evaluating the opinions of George Moses, D.O. Specifically, plaintiff argues that the ALJ found Dr. Moses' opinions not persuasive without properly evaluating the supportability and consistency factors as required by 20 C.F.R. § 416.920c. (Doc. 11 at PAGEID 1543-48). The Commissioner responds that the ALJ adequately addressed the consistency and supportability factors when evaluating the

5

medical opinion evidence and formulating plaintiff's residual functional capacity. (Doc. 13 at PAGEID 1554-60).

**E. Relevant Evidence**

*1.    Relevant Treatment History*

Plaintiff received mental health treatment at Allwell Behavior Health Services ("Allwell"). Allwell treatment notes from December 2019 indicate that plaintiff is "[n]o longer having the hallucinations or paranoia like in the past." (Tr. 620). She still suffered from anxiety and daily panic symptoms, but she denied thoughts of hurting herself or others. (*Id.*). At that time, psychiatric examination revealed clear and linear thought processes, no overt delusions, and intact judgment and insight. Mood and affect appeared labile but appropriate to the situation. (Tr. 624-25). Plaintiff's diagnosis remained schizoaffective disorder, bipolar type; post-traumatic stress disorder ("PTSD"); and opioid abuse, in remission. (Tr. 627).

Plaintiff next treated at Allwell on February 4, 2020, following a hospitalization for metoprolol overdose and Xanax abuse. (Tr. 629-30). At that time, she complained of anxiety and requested Xanax, but treating physician Roger Balogh, M.D., was "not comfortable prescribing it." (Tr. 630). Plaintiff remained in a suboxone program and denied any current hallucinations or thoughts of hurting herself or others. (*Id.*). Psychiatric evaluation revealed clear and linear thought processes, no overt delusions, intact judgment and insight, and mood and affect appropriate to the situation. (Tr. 634-35). Dr. Balogh discussed his semiretirement and transferred plaintiff's care to Dr. George Moses, D.O. (Tr. 635). Dr. Balogh diagnosed plaintiff

with schizoaffective disorder, bipolar type; PTSD; opioid abuse, in remission; and sedative, hypnotic or anxiolytic dependence, uncomplicated. (Tr. 637).

        2.      *Dr. George Moses, D.O.*

On March 17, 2020, plaintiff first treated with Dr. George Moses, D.O., at Allwell. Plaintiff stated that she had been taking medications that records indicated had been discontinued, and she had also taken klonopin belonging to someone else. (Tr. 640). She reported hearing upsetting voices telling her to "get revenge on people" but "does not follow what she hears." (*Id.*). Dr. Moses also reported that plaintiff "sees people either as shadows or ones that look real to her" and sometimes "sees her deceased husband & has conversations with him . . . ." (*Id.*). Psychiatric evaluation revealed clear and linear thought processes, no overt delusions, intact judgment and insight, oriented to time/place/person, no apparent impairment with recent and remote memory, and mood and affect appropriate to the situation. (Tr. 644-45). Dr. Moses diagnosed schizoaffective disorder, bipolar type; PTSD; opioid abuse, in remission; and sedative, hypnotic or anxiolytic dependence, uncomplicated. (Tr. 647-48).

On March 18, 2020, Dr. Moses issued a letter. It stated, in its entirety, "This letter is being written to verify that [plaintiff] cannot work around more than a couple of people, and should not have regular contact with the public." (Tr. 1493).

On April 14, 2020, plaintiff had a telepsychiatry video conference with Dr. Moses. (Tr. 650). Plaintiff reported that she was doing better on her new medication and no longer experienced visual hallucinations. (Tr. 651). However, she continued to have anxiety unchanged by medications. (*Id.*). Psychiatric examination revealed clear and linear thought

processes, no overt delusions, intact judgment and insight, oriented to time/place/person, no apparent impairment in recent and remote memory, impaired attention span/distractibility, and mood and affect appropriate to the situation but irritable. (Tr. 656). Dr. Moses assessed "[c]ontinued racing, violent thoughts & irritability." (Tr. 658). He diagnosed schizoaffective disorder, bipolar type; PTSD; opioid abuse, in remission; and sedative, hypnotic or anxiolytic dependence, uncomplicated. (Tr. 659).

On December 3, 2020, plaintiff again engaged Dr. Moses via telepsychiatry video conference. (Tr. 1280). Plaintiff reported that she was irritable, frustrated, and "her energy is horrible." (Tr. 1281). Psychiatric examination revealed clear and linear thought processes, no overt delusions, intact judgment and insight, oriented to time/place/person, no apparent impairment in recent and remote memory, and attention span and concentration within normal limits. (Tr. 1286). Dr. Moses assessed schizoaffective disorder with no evidence of current delusions or hallucinations. (Tr. 1287). Plaintiff's diagnosis remained schizoaffective disorder, bipolar type; PTSD; opioid abuse, in remission; and sedative, hypnotic or anxiolytic dependence, uncomplicated. (Tr. 1288).

On March 30, 2021, Dr. Moses had a telepsychiatry video conference with plaintiff. (Tr. 110). Plaintiff reported she had been irritable with her partner and had to go stay with her brother to be away from the situation. The progress note states:

> [Plaintiff] is verbally aggressive when angry & does not think she can control it. She has not had Haldol shot for 5 months. Sleep- ok with trazodone. Energy- poor. Appetite- "too much." She has gained significant weight. She isolates.

8

(Tr. 111). On psychiatric examination, Dr. Moses observed objective findings of anger and delusions, in that plaintiff "had believed police killed prostitutes locally. Believes partner is doing things that she is not a times." (Tr. 116-117). Dr. Moses also noted "seizures & abnormal brain waves likely associated with TBI resulting in mood disturbance." (Tr. 118). Dr. Moses assessed schizoaffective disorder and mood disorder secondary to TBI, continued plaintiff's medications, and referred plaintiff for individual psychotherapy. (*Id*.).

On April 19, 2021, Dr. Moses completed a medical opinion questionnaire regarding plaintiff's mental health limitations. Dr. Moses opined that plaintiff was seriously limited[3] in her ability to remember work-like procedures; maintain attention for two-hour segments; work in coordination with or proximity to others without being unduly distracted; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; deal with stress of semi-skilled and skilled work; interact appropriately with the general public; travel in unfamiliar places; and use public transportation. (Tr. 1491-92). Dr. Moses further indicated that plaintiff would be unable to meet competitive standards[4] in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly

---

[3] "Seriously limited" was defined as "noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week." (Tr. 1491).
[4] "Unable to meet competitive standards" was defined as "noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week." (Tr. 1491).

9

distracted[5]; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress. (Tr. 1491). Dr. Moses noted that plaintiff would likely miss more than four days of work per month due to her impairments. (Tr. 1492).

At plaintiff's next telepsychiatry video conference with Dr. Moses on April 29, 2021, plaintiff reported that Trileptal was helping; she was sleeping well; she had poor energy; she was still gaining weight; and she had received a Haldol shot. (Tr. 123). Dr. Moses did not note any significant findings on psychiatric examination. (Tr. 128).

On June 21, 2021, plaintiff had a telepsychiatry video conference with Dr. Moses. (Tr. 134). Plaintiff reported the Trileptal "works really well but she has tremor with even a low dose so she stopped taking it 2 weeks ago." (Tr. 135). Plaintiff reported insomnia, poor energy and appetite, irritable mood, and "mind racing thoughts and thoughts of hurting people but not killing them." (*Id*.). On mental status examination, plaintiff displayed kinesthetic, tactile, and visual hallucinations; limited short term memory; and impaired attention span and distractibility. (Tr. 140). Dr. Moses added Keppra to her medication regimen for mood and hallucinations, discontinued Trileptal, and continued her other medications. (Tr. 142).

        2.    *State Agency Psychologists Jamie Lai, Ph.D., and Janet Souder, Psy.D.*

On May 11, 2020, state agency psychologist Jamie Lai, Ph.D., reviewed plaintiff's mental health records. Dr. Lai found that plaintiff was moderately limited in her ability to

---

[5] Dr. Moses marked both "seriously limited" and "unable to meet competitive standards" for plaintiff's ability to work in coordination with or proximity to others without being unduly distracted. (Tr. 1491).

remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting. (Tr. 200-01). Dr. Lai found plaintiff markedly limited in her ability to interact appropriately with the general public. (Tr. 201). Accordingly, she concluded that plaintiff "should be limited to simple routine and repetitive tasks involving only simple work-related decisions and with few, if any, workplace changes." (Tr. 201). In addition, plaintiff should have only "superficial interactions with a small group of familiar coworkers and supervisors" and "brief and intermittent interactions" with the general public. (*Id.*). Dr. Lai further concluded that plaintiff's work "cannot have strict production quotas or be fast-paced such as on an assembly line." (*Id.*). On reconsideration, Dr. Janet Souder echoed those conclusions on August 12, 2020. (Tr. 212).

    **F. The ALJ's Evaluation of Dr. Moses' Opinion Is Not Supported by Substantial Evidence.**

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical

opinions. *See* 20 C.F.R. § 416.920c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[6] *Id*. The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[7], including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 416.920c(b). In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). With respect to the

---

[6] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 416.927(c)(2)).

[7] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

supportability factor, "[t]he more relevant the objective medical evidence[8] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 416.920c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

In March 2020, Dr. Moses opined that plaintiff could not work around more than a couple of people and should not have regular contact with the public. (Tr. 1493). On April 19, 2021, Dr. Moses opined that plaintiff would be "seriously limited" and "unable to meet competitive standards" in her mental abilities and aptitudes needed to do most work-related activities on a sustained basis. Dr. Moses also opined that plaintiff had very poor stress

---

[8] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

tolerance, suffered from limited concentration and memory, and would likely be absent from work more than four days per month as a result of her impairments. (Tr. 1491-92).

The state agency psychologists opined that plaintiff should be limited to: simple, routine, and repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes; superficial interactions with a small group of familiar coworkers and supervisors and only occasional, brief, and intermittent contact with the public; and work that was not fast-paced or having strict production quotas. (Tr. 201, 212).

The ALJ discussed the medical source opinions as follows:

> The [ALJ] has found [the state agency psychological assessments] partially persuasive. The [ALJ] has provided additional vocationally relevant clarification regarding the superficial limitation in social function, and has provided for only occasional changes in duties and work setting to accommodate [plaintiff's] fluctuating mental health symptomology. In restricting [plaintiff's] interaction around others as reflected in the residual functional capacity, the [ALJ] notes a March 18, 2020, correspondence from George Moses, D.O., which indicated [plaintiff] "cannot work around more than a couple of people and should not have regular contact with the public" (Exhibit E23F, page 1). While the [ALJ] has found the complete prohibition of "regular contact with the public" unpersuasive, the [ALJ] has limited that contact consistent with the opinions of the psychological consultants and based on a full review of the evidence of record, including [plaintiff's] own testimony during hearing. The [ALJ] notes that Dr. Moses provides no specific reference to treatment records or objective evidence of any type to support the assessed limitation, further detracting from the opinions persuasiveness.

***

> In a questionnaire prepared by [plaintiff's] representative and dated April 19, 2021, George Moses, D.O., completed a checklist indicating [plaintiff] would have a range of serious limitations to being unable to meet competitive standards in multiple areas of mental abilities and aptitudes needed to do unskilled work (Exhibit E22F). Dr. Moses indicated that [plaintiff] would be expected to miss more than four days per month of work due to her treatment or impairments and narratively stated, [plaintiff] "has very poor stress/affect tolerance" and "limited

14

>concentration and memory" (Exhibit E22F, page 2). The [ALJ] has not found this assessment persuasive. While there [are] no evaluation notes concurrent with this opinion in the record, the [ALJ] notes that Dr. Moses['] records on December 3, 2020, showed an entirely normal psychiatric evaluation with specific findings of attention span and concentration within normal limitations and no apparent impairment in either recent or remote memory (Exhibit E14F, page 7). Dr. Moses' checklists and narrative statements provide no objective support for the otherwise extreme limitations assessed.

(Tr. 21-22).

Plaintiff contends the ALJ violated 20 C.F.R. § 416.920c when evaluating Dr. Moses' opinions because the ALJ failed to properly assess the mandatory supportability and consistency factors in accordance with the regulation. The Court agrees.

*A. Supportability*

In evaluating the supportability of Dr. Moses' opinions, the ALJ stated there was a lack of objective evidence supporting those opinions and "no evaluation notes concurrent with" Dr. Moses' April 19, 2021 opinion. The ALJ relied on what he stated was the treatment record most closely in time to the April 2021 medical questionnaire, i.e., the notes from plaintiff's December 3, 2020 telepsychiatry video conference showing relatively normal findings. (Tr. 21-22). This finding is factually incorrect.

As noted above, at plaintiff's March 30, 2021 telepsychiatry encounter with Dr. Moses, plaintiff reported heightened irritability, verbal aggression, uncontrolled anger, and isolation. (Tr. 111). On mental status examination, Dr. Moses observed objective findings of anger and delusions, in that plaintiff "had believed police killed prostitutes locally. Believes partner is doing things that she is not a times." (Tr. 116-117). Dr. Moses also noted "seizures & abnormal brain waves likely associated with TBI resulting in mood disturbance." (Tr. 118). Dr. Moses

15

assessed schizoaffective disorder and mood disorder secondary to TBI, continued plaintiff's medications, and referred plaintiff for individual psychotherapy. (*Id*.). These findings were made three weeks before Dr. Moses' April 19, 2021 opinion and appear to provide some objective support for the opinion. The ALJ, however, did not consider this evidence.

Moreover, just two months after Dr. Moses rendered his April 2021 opinion, treatment records reflect plaintiff's report of insomnia, poor energy and appetite, irritable mood, and "mind racing thoughts and thoughts of hurting people but not killing them." (*Id*.). On mental status examination, Dr. Moses noted the following objective abnormal or psychotic thoughts: kinesthetic, tactile, and visual hallucinations. Dr. Moses also reported findings of limited short term memory and impaired attention span and distractibility. (Tr. 140). Dr. Moses added Keppra to plaintiff's medication regimen for mood and hallucinations, discontinued Trileptal, and continued her other mediations. (Tr. 142). This record lends further support to Dr. Moses' April 2021 opinion, which the ALJ failed to consider.

"An administrative law judge may not ignore evidence favorable to plaintiff." *Lincicome v. Astrue*, No. 2:11-cv-0678, 2012 WL 2244333, at *1 (S.D. Ohio June 15, 2012) (citing *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (1985); *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920 (6th Cir. 1999) (unpublished)). The ALJ must instead "articulate the evidence accepted or rejected when making a disability finding to enable the reviewing court to engage in meaningful judicial review." *Id*. When an ALJ fails to mention relevant evidence in his decision "the reviewing court cannot tell if significant probative evidence was not credited or

simply ignored." *Morris v. Sec'y of H.H.S.*, No. 86-5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

The ALJ's decision makes no mention of Dr. Moses' March 2021 and June 2021 treatment records and incorrectly implies that Dr. Moses' December 2020 treatment note reflects plaintiff's last visit with Dr. Moses before he rendered his April 2021 opinion. Given the ALJ's silence on these two records, the Court cannot discern whether the ALJ overlooked, ignored, or rejected this evidence. Without the ALJ's evaluation of these contemporaneous medical records in assessing the supportability of Dr. Moses' April 2021 opinion, the Court cannot conclude the ALJ's supportability finding is supported by substantial evidence.

    *B. Consistency*

Plaintiff also contends the ALJ failed to adequately address the consistency factor as required by 20 C.F.R. § 416.920c(b)(2) when evaluating Dr. Moses' opinions. (Doc. 11 at PAGEID 1546-48). The ALJ included a single sentence concerning the consistency of Dr. Moses' March 18, 2020 opinion, stating, "While the [ALJ] has found [Dr. Moses' recommendation for] complete prohibition of 'regular contact with the public' unpersuasive, the [ALJ] has limited that contact consistent with the opinions of the psychological consultants and based on a full review of the evidence of record, including [plaintiff's] own testimony during hearing." (Tr. 21). The ALJ did not assess the consistency of Dr. Moses' April 2021 opinion.

The ALJ failed to identify the records on which he relied or the testimony he found inconsistent with either of Dr. Moses' opinions to enable this Court to meaningfully review the ALJ's consistency finding. The administrative record suggests plaintiff's treatment with other

17

providers and her testimony are consistent with the serious mental health limitations assessed by Dr. Moses.

For example, the state agency psychologists reviewed records from the Muskingum Valley Health Centers and noted:

> 12/09/19-Psych prog note. MSE notes restless and fidgety behavior, attitude preoccupied and anxious, speech is rapid, mood is anxious, depressed and labile. Inappropriate anxious affect, depressed, labile, unhappy, poor insight, poor judgment.

(Tr. 196; *see also* Tr. 427). The state agency psychologists also noted hospital records showing "[i]ntentional overdose of beta-adrenergic blocking drug Lopressor and Xanax" on December 20, 2019. (*Id.*; *see* Tr. 950). Those psychologists concluded there was "new and material evidence that supports some additional restrictions r/t capacity for social interactions in the workplace," including a new diagnosis of PTSD (Tr. 201, 208), and that plaintiff was markedly limited in her ability to interact appropriately with the general public. (Tr. 201, 210). Muskingum Valley Health Center records from December 27, 2019 indicated plaintiff had six prior suicide attempts, with the most recent one week ago. (Tr. 430). Mental status exam showed depressed mood, fair insight and fair judgment. (Tr. 432). In March 2021, plaintiff was seen at the emergency department for an "[a]ccidental overdose of ecstasy" with "low suspicion of suicide attempt." (Tr. 67). On psychiatric examination, plaintiff's mood was anxious, her speech was tangential, and she expressed impulsivity. (Tr. 69). Plaintiff's testimony indicates that: she failed at her previous job because she does not get along with other people and could not tolerate interactions with the manager at that job (Tr. 175-76); her doctor recently prescribed medication for "toxic mood swings" (Tr. 176); her responses to "getting upset at somebody" are "not normal" because

she "will medi[t]ate on like how to get even with them" (*Id.*); others thought she hallucinated that "cops were killing prostitutes" but she thought it was "serious" (Tr. 177); she goes to the grocery store at night to avoid other people (Tr. 178); and she has panic attacks if people move around her too quickly, are too loud, or touch her without asking (Tr. 179).

The ALJ failed to identify the records or testimony that provide the point of comparison for his consistency finding or to explain how these records are inconsistent with Dr. Moses' opinions. In the absence of a sufficient explanation of consistency with the record as a whole, the Court cannot conclude that the ALJ's consideration of Dr. Moses' opinions is supported by substantial evidence. *See* 20 C.F.R. § 416.920c(b)(2) (requiring the ALJ to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinion" in the written decision) (emphasis added). *See Carolyn W. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-423, 2022 WL 4244214, at *5 (S.D. Ohio Sept. 15, 2022) (the new medical opinion guidelines set forth a "mandatory articulation rule" that "serves the same purpose as the good reasons requirement of the treating physician rule"). The Commissioner's references (Doc. 13 at PAGEID 1557-58) to record evidence inconsistent with Dr. Moses' opinion is similarly unavailing, as these were not reasons given by the ALJ for his decision. *See Miller v. Berryhill*, No. 3:16-cv-94, 2017 WL 1021313, at *8 (S.D. Ohio Mar. 16, 2017) (explaining that the Court generally should not accept post-hoc rationalizations for agency action unless any associated error is harmless).

The ALJ failed to explain how he evaluated the consistency of Dr. Moses' opinions as required by 20 C.F.R. § 416.920c(b)(2). Therefore, his finding is not supported by substantial evidence.

**III. Conclusion**

Based on the foregoing, plaintiff's Statement of Errors (Doc. 11) is **SUSTAINED**, and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Order.

Date:   August 24, 2023

_____
Karen L. Litkovitz
United States Magistrate Judge